**UNITED STATES of America, Plaintiff,**

v.

**Hassan TABAJA, Defendant.**

**No. 01–80942.**

United States District Court, E.D. Michigan, Southern Division.

Jan. 17, 2003.

David S. Steingold, David S. Steingold Assoc., Detroit, Barry Resnick, Farmington Hills, for Hassan Ibrahim Tabaja, defendant.

Kenneth R. Chadwell, United States Attorney's Offic, Detroit, for U.S. Attorneys.

### RESTITUTION ORDER

ROBERTS, District Judge.

## I. *BACKGROUND*

After a three day trial, Defendant Hassan Tabaja was convicted of Aiding and Abetting a Kidnaping in violation of 18 U.S.C. §§ 1204,2, International Parental

Kidnaping, Aiding and Abetting. Defendant was sentenced on October 24, 2002. However, while a Victim Impact Statement Financial Statement ("VISFS") had been filed, consideration of restitution was delayed until additional information could be gathered and a hearing could be held on the amount of loss.

A restitution hearing was held on January 6, 2003.

### ANALYSIS

Defendant was sentenced in accordance with the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. §§ 3663A, inasmuch as kidnapping is considered a crime of violence within the meaning of 18 U.S.C. 16(b) and 18 U.S.C. § 3663A(c)(1)(A)(*l*) covers crimes of violence.

The MVRA requires a defendant to pay restitution to identifiable victims who have suffered either physical injuries or pecuniary losses as a result of certain criminal offenses. See 18 U.S.C. § 3663A(a)(1), § 3663A(c)(1). For purposes of the MVRA, a victim is anyone who is directly and proximately harmed as a result of the commission of the offense, and, if the victim is under 18 years of age, that victim's representative. 18 U.S.C. 3663A(2).

There is no question in this case that the victims are: (1) Sam Tabaja, the kidnaped minor, and (2) Zohra Tabaja Abbiss, mother of Sam Tabaja, former wife of All Ibraham Tabaja, who removed Sam Tabaja to Lebanon, and former sister-in-law of Hassan Tabaja, Defendant here.

 The burden of demonstrating the amount of the victim's loss is on the government, and any dispute regarding the amount or type of restitution must be resolved by the Court, by a preponderance of the evidence. 18 U.S.C. 3664(e). Ultimately, the amount of restitution ordered is within the discretion of the Court, which must take into account all of the evidence

produced. *U.S. v. Vandeberg*, 201 F.3d 805, 814 (6th Cir.2000). To survive scrutiny, there must be a close connection between the restitution ordered and the injury sustained as a result of the criminal behavior. Therefore, a restitution order must be based on losses directly resulting from the Defendant's criminal conduct. In *United States v. Cummings*, 281 F.3d 1046 (9th Cir.2002), a restitution case involving an international kidnaping, the court held precisely this, and included in its restitution order an amount spent by the custodial parent on attorney fees incurred through *Hague Convention* procedures to regain her child. The court stated that this amount was related to the government's investigation and prosecution of the Defendant for wrongfully retaining his child in a foreign country, and was "a direct and foreseeable result of Cummings' improper removal and retention of them." *Id.* at 1052. Further, the court stated that "a parent deprived of her children does not have the same choices about what sums are appropriately spent to rectify the harm done." *Id.* at 1053.

Prior to Defendant's sentencing, Ms. Abbiss prepared a VISFS, dated August 22, 2002. At the January 6, 2003 hearing, counsel for the United States withdrew losses listed by Zohra Abbiss for medical expenses ($3,000), medication ($6,200) and counseling/therapy ($7,200), conceding that no bodily injury had been established by Zohra Abbiss. The MVRA provides that medical and related expenses are recoverable only if the offense has resulted in bodily injury to the victim. 18 U.S.C. 3663A(2).

The other losses claimed by Zohra Abbiss in her initial VISFS were as follows:

"Lost income—12 months not working: $12,000
phone bills $ 7,200
Trip to Lebanon to try and get Sam back $16,260."

The $16,260 trip to Lebanon was explained as follows:

"I traveled with my mother to Lebanon to try to get Sam back. I left March 21, 1998 and returned home unsuccessful April 19, 1998. The trip cost the following:

| | |
|---|---|
| Airfare (British Airways) | $ 3,000 |
| Hired an Attorney in Lebanon | $ 3,000 |
| Hired a translator in Lebanon | $ 500 |
| Food (ate out at $100 per day) | $ 3,000 |
| Taxis (approximately $100 per day) | $ 3,000 |
| Hotel (21 days $60 per night) | $ 1,260 |
| | $16,260" |

At the hearing, Zohra Abbiss did not request an amount for phone bills ($7,200).

The Court will address each of the remaining items listed in the VISFS.[1]

**Airfare**

■ At the hearing, Zohra Abbiss reduced the amount requested for airfare to Lebanon from $3,000 to $2,242, saying she had only estimated the amount for purposes of preparing the VISFS. She testified that the $2,243 was airfare for both herself and her mother, and that her fare would have been half of the amount listed, or $1,121. Zohra Abbiss produced a sales invoice from a travel agency.

■ The Court finds that inasmuch as Zohra Abbiss' mother is not a "victim" within the meaning of the MVRA, her airfare is not recoverable.

The Court finds that the airfare paid by Zohra Abbiss to go to Lebanon in an effort to get her son back was a direct and foreseeable result of Defendant's criminal activity.

**Attorney Hired In Lebanon**

■ Zohra Abbiss testified that she hired an attorney in Lebanon to help her on visitation and custody issues related to her son, Sam Tabaja. She testified that she could not remember his name. She paid him $3,000 cash as a retainer. She got no itemization or bill from him as to how the $3,000 was spent. She got no reports from him. She had no proof of contact with him.

While such an expense would be a reasonable one to incur under the authority of *U.S. v. Cummings, supra,* the government has not shown by a preponderance of the evidence that the expense was incurred.

**Translator In Lebanon**

■ Zohra Abbiss' VISFS says that she "hired a translator in Lebanon" and paid the translator $500 to translate certain documents evidencing her custody of Sam Tabaja. At the hearing, however, Zohra Abbiss testified that the documents were actually translated in the United States at a cost of $300.00. She provided the name of the company which did the translation.

Five sets of documents were produced at the hearing—all related to the custody of Sam Tabaja and a personal protection order against Zohra. Official certificates indicate they were translated into Lebanese in April, 1998, which would have been shortly before Zohra Abbiss' departure for Lebanon. The court finds that the translation of these documents was reasonably related to Zohra Abbiss' attempt to regain custody of her son. Even though no receipts have been produced, the translated documents themselves are some evidence, and the Court will allow this expense.

**FOOD, TAXIS AND HOTEL**

■ Zohra Abbiss attested that she spent $3,000 on food while she was in Lebanon. The VISFS was based on 21 days in Lebanon and lists $100/day for food. If Zohra Abbiss was there for 21

---

1. At the hearing, the Government requested that the Court also award Zohra Abbiss back child support she has been entitled to since Sam Tabaja was removed to Lebanon. The Government has filed a Post–Restitution Hearing Memorandum of Law on this issue, to which Defendant will respond. If appropriate, the Court will amend this Restitution Order under the authority of 18 U.S.C. 3664(d)(5).

days, this amount should have been listed at $2,100.

At the hearing, however, Zohra Abbiss testified that she was really in Lebanon for 37 days, so that the amount spent on food was really $3,700. In a post-hearing memorandum filed, counsel for the government requested $1,850.

Similarly, the VISFS lists 21 days at a hotel, at $60 per night, for a total of $1,260. At the hearing, however, Zohra Abbiss increased the amount requested for hotel, testifying that she paid $50–60 per night for 37 nights. Counsel for the government requested an award of $1,850.

She also increased the amount requested for taxi's from $3,000 to $3,700, based on spending $100 per day on taxis for 37 days.

Zohra produced no receipts for any of these expenses. She could not remember the name of the hotel she stayed at. She did testify that there were some nights she spent with relatives. Nevertheless she paid the hotel cash for 37 nights. When asked why she had no records of her stay there, Zohra Abbiss testified that she "assumed" no records were available after this passage of time.

Zohra Abbiss further testified that she had visited Lebanon on other occasions, and had always stayed with relatives. She testified she had over 100 relatives there.

She had no receipts for any restaurants, nor did she have receipts for any taxis. When asked why her taxi fare was $100/day, Zohra Abbiss testified that she often had taxis walt for her at various restaurants because it was difficult to find cabs for return trips to the hotel. She also testified that she would take taxis to visit her father's relatives, and that some of them lived four hours from the hotel. She visited relatives whom she thought could help her in recovering Sam and in understanding how the court system worked.

The Court finds that it is as likely that Zohra Abbiss stayed and ate with relatives, as it is that she stayed at a hotel, given the lack of any receipts or other proof, and the amount of time Zohra Abbiss has had available to her to provide evidence of the expenses she allegedly incurred in Lebanon. It is also likely that much of the amount spent on taxis had nothing to do with efforts to gain custody of Sam Tabaja.

The Court also notes the difficulty it has had in ascertaining the number of days Zohra Abbiss actually spent in Lebanon. The VISFS lists 21 days, but Zohra Abbiss testified she spent 37 days there. However, her passport stamp, attached to the VISFS, shows that she entered Lebanon on April 19 and departed on May 21, a period of 33 days.

The Court finds that the Government has failed to sustain its burden to prove that Zohra Abbiss incurred hotel, taxi and meal expenses in Lebanon at the level she attests to, for 37 days. It appears Zohra Abbiss was in Lebanon for 33 days. Assuming that she stayed with relatives but did incur some expenses during this period and that some of those days were devoted to efforts to regain custody of Sam Tabaja, the Court in its discretion, will award *$1,000.00*.

## WAGES

█ On the VISFS, Zohra Abbiss listed $12,000 in lost income. She attested that she did not work for 12 months because of her son's kidnaping. At the restitution hearing, however, she changed her wage claim to $8,710. This was calculated at $130/day for the 37 days in Lebanon, (plus two travel days) (39 days × $130/day= $5,070) and 28 additional days for attending court, participating in the investigation, etc. (28 days × 130/day =$3,640).

18 U.S.C. 3663(b)(4) provides that victims can be reimbursed for lost income,

transportation and other expenses related to participation in the investigation or prosecution of the offense or attendance at the proceedings related to the offense.

However, Zohra Abbiss failed to produce any evidence of who her employer was at the time of the alleged wage loss. She produced no W–2's, no pay stubs, no letter from her employer concerning the days missed from work because of her participation in this investigation and prosecution. Without such proof, this Court is constrained to award only the statutory witness fee for the three days Zohra Abbiss appeared at court for trial. The government pays witnesses $40.00 per day.

With respect to the 39 days that Zohra Abbiss was in Lebanon, she failed to produce any proof that she was employed during that time, or proof of her wages. This should have been easily ascertainable. Zohra Abbiss' testimony at the hearing seriously differed from income information she placed in the VISFS, which calls into question her credibility, not only with respect to wage information, but other elements of her claimed losses as well.

The Court finds that the government has not sustained its burden to prove Zohra Abbiss' claimed wage loss, and will order only the statutory witness fee for the days Zohra appeared at trial.

## CONCLUSION

The Court orders restitution against Defendant [2] in the following amount:

| | |
|---|---|
| Zohra Abbiss' airfare | $1,121.00 |
| Translator | $ 300.00 |
| Living expenses for 33 days in Lebanon | $1,000.00 |
| Statutory witness fees for Court Appearance on: June 11–13, 2002 | $ 120.00 |
| TOTAL: | $2,541.00 |

**IT IS SO ORDERED.**

2. The Government has requested that this be a joint and several award against Defendant and his brother, Hassan Tabaja, the alleged kidnaper. 18 U.S.C. 3664 speaks in terms of the "defendant." Specifically, 18 U.S.C. 3664(h) states that "If the court finds that more than one defendant has contributed to the loss ..., the court may make each defendant liable for payment of the full amount ... or may apportion liability among the defendants..." The statute, however, contemplates that the defendant(s) have all had an opportunity to participate in the restitution proceedings. Hassan Tabaja has not done that, and has not even been given notice of the indictment. The Court, therefore, declines to make this a joint and several restitution obligation.